IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02879-RM-KLM

JASON UECKER, and
QUENTIN GOOD,

      Plaintiffs,

v.

UNITED STATES FOREST SERVICE, Department of Agriculture, and
JOSHUA VOORHIS, individually, and in his official capacity as District Ranger, South Park
Ranger District,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss** [#18],[1] filed by Defendants

United States Forest Service, Department of Agriculture[2] ("Forest Service") and Joshua

Voorhis ("Voorhis") in his official capacity; and on the **Motion to Dismiss** [#19], filed by

Defendant Voorhis in his individual capacity (collectively, the "Motions"). Plaintiffs, who

---

[1]    "[#18]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Recommendation.

[2]    "The United States Forest Service is an agency of the Department of Agriculture with primary responsibility for managing the national forests." *United States v. Blacklund*, 689 F.3d 986, 992 n.5 (9th Cir. 2012).

proceed as pro se litigants,[3] filed Responses [#21, #26, #27][4] in opposition to the Motions [#18, #19], and Defendants filed Replies [#24, #28, #29] in further support of the Motions.[5] Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motions have been referred to the undersigned for a recommendation regarding disposition. *See* [#23]. The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [#18, #19] be **GRANTED**.

## I. Background[6]

[3] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigants' advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigants'] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4] Plaintiffs ask for oral argument on the Motions. *See Response* [#26] at 1. After having read the briefs and examined the law, the Court has determined that oral argument would not materially assist in resolution of the Motions, and therefore Plaintiffs' request is denied.

[5] In Plaintiffs' first Response [#21], they argue that the Motions should be denied because they did not receive copies of the Motions [#18, #19] from Defendants. *See Reply* [#24]. However, Plaintiffs subsequently received copies and have since filed full Responses [#26, #27] on the merits of the Motions. Thus, the Court will not deny the Motions on the basis that Plaintiffs did not initially receive copies of them, because Plaintiffs have incurred no prejudice.

[6] For the purposes of resolving the Motions [#18, #19], the Court takes as true all well-pled, as opposed to conclusory, allegations made in Plaintiffs' Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs may not amend their Complaint by adding factual allegations in their Responses to Defendants' Motions seeking dismissal. *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206-07 (D. Colo. Feb. 3, 2015). When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Further, when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[i]n addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff[s'] claim and the parties do

For many years, Plaintiffs have worked two unpatented mining claims located on United States National Forest property in Teller County, Colorado. Although the precise relationship between the two claims (named "Blue on Black" and "Dreamtime") is unclear, they appear, at a minimum, to be located next to one another and worked by Plaintiffs from the same camp site.

Since 1998, Plaintiff Jason Uecker ("Uecker") has worked the Blue on Black claim. *Pls.' Ex. 6, June 17, 2004 Decision Notice* [#27-6] at 2. In order to work claims on National Forest property, a plan of operations must be submitted and approved by the local District Ranger. *See* 36 C.F.R. § 228.5. Plaintiff Uecker initially worked his claim without such a plan in place. *Pls.' Ex. 5, Surface Use Determination* [#27-5] at 3. Three proposed plans that he submitted in August 1999 and in 2002 were not approved, but he submitted a fourth plan in April 2003 (which was later modified in July 2003). *Id.* In early June 2003, South Park District Ranger Sara Mayben ("Mayben") requested that a Surface Use Determination study be conducted for the Blue on Black claim to help her decide whether Plaintiff Uecker's latest proposed plan should be approved. *Id.* On December 4, 2003, the Surface Use Determination report was completed, ultimately stating that his proposed plan was

_____

not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (holding that, because the complaint referred to two outside documents, "and all the parties invited the district court to consider these works, the district court properly considered the work in ruling on the 12(b)(6) motion; *see also id.* at 942 (citing *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967) (holding the legal effect of an incorporated document considered on a motion to dismiss is to be determined by the document's terms rather than by the allegations of the pleader in the complaint (internal brackets and quotation marks omitted)). Both Plaintiffs and Defendants have submitted various documentary exhibits in connection with the briefs on the Motions, but based on the foregoing, the Court finds that it may only consider the following here: (1) Defendants' Exhibit 1: October 2, 2015 Letter [#18-1] (duplicated at [#19-1]); (2) Plaintiffs' Exhibit 5: December 4, 2003 Surface Use Determination for the Blue on Black Lode Mining Claim [#27-5]; (3) Plaintiffs' Exhibit 6: June 17, 2004 Decision Notice and Finding of No Significant Impact [for] Blue on Black Mine [#27-6]; and (4) Plaintiffs' Exhibit 7: November 1, 2017 Letter [#27-7].

"reasonable" and recommending that the plan "should be approved if his proposal meets all of the other regulatory requirements." *Id.* at 4. Plaintiffs allege that a similar Surface Use Determination was issued for the Dreamtime mining claim owned by Plaintiff Quentin Good ("Good"). *Compl.* [#1] at 6.

On June 17, 2004, District Ranger Mayben conditionally approved Plaintiff Uecker's proposed plan, stating in part:

> I will approve the plan of operations with specific supplemental modifications outlined in this Decision Notice for a period of five years through December 31, 2009. At that time if the operator requests, the Forest Service will perform a [National Environmental Policy Act ("NEPA")] compliance review and may extend the plan of operations for an additional five years if the operation is consistent with NEPA requirements at that time, and is within the scope of this [environmental assessment] and decision. At the end of 10 years, the operator will be required to submit a new plan of operations for a full scale NEPA analysis by the Forest Service.

*Pls.' Ex. 6* [#27-6] at 6. At the end of the Decision Notice, information was provided which explained how any part of District Ranger Mayben's determination could be administratively appealed within forty-five days.[7] *Id.* Thus, Plaintiff Uecker's plan of operations was thereafter approved through December 31, 2009, with a possible extension through December 31, 2014. *Id.* Plaintiffs allege that a similar Decision Notice was issued for Plaintiff Good's Dreamtime mining claim, approving his plan of operations. *Compl.* [#1] at 9.

After Plaintiffs' plans of operations expired on December 31, 2009, the Forest Service officially determined that Plaintiffs' mining claims were no longer in compliance with federal regulations, although Plaintiffs alleged that they "repeatedly asked" for an extension

---

[7] There are no allegations that Plaintiff Uecker filed an administrative appeal in connection with the June 17, 2004 Decision Notice [#27-6], including the five-year operations limitation.

of their previously approved plans and/or for approval of new mining plans. *Id.* at 10.

Plaintiffs assert that the adverse decisions on their appeals from the denial of their

extensions and/or new plans were not timely issued, thus making those decisions invalid.

*Id.* at 10-11.

On October 2, 2015, a letter was sent to Plaintiff Good by Defendant Joshua Voorhis

("Voorhis"), the new District Ranger, telling him that he must remove all of his property from

the Dreamtime site. *Id.* at 14. This letter stated:

> A letter was sent to you on October 31, 2013, from the Acting Forest
> Supervisor, upholding District Ranger Sexton's Administrative Decision dated
> May 2, 2013. This letter instructed you to cease and desist all mining
> activities until such time as you could comply with the requirements set forth
> in 36 CFR 228, subpart A, regulations, which require you to submit a Plan of
> Operations to the U.S. Forest Service for review and approval. As of this
> date, the South Park Ranger District has not received your Plan of
> Operations.
>
> I am hereby notifying you that your operations on National Forest System
> lands without an approved Plan of Operations are unnecessarily and
> unreasonably causing injury, loss and damage to surface resources. The
> activities of concern are:
> • Use of mechanized equipment;
> • The wire and t-post perimeter fence and metal gate, which restrict
>   access by the general public to National Forest System lands;
> • Cutting green trees;
> • On-site structures such as the perimeter fence (wire and t-post),
>   trailer, and signs;
> • The open excavations;
> • Trash and assorted personal property scattered throughout the site.
>
> Therefore, you are in non-compliance with the requirements of 36 CFR
> 228.4(a) (plan of operations requirements), 228.5(a) (operations shall be
> conducted in accordance with an approved plan of operations), and
> 261.10(p) (operating on NFS lands without an approved plan of operations.)
>
> **Until you have complied with the regulations in 36 CFR 228 by
> obtaining an approved Plan of Operations for your mining-related
> activities on your Dreamtime Unpatented Mining Claim, you must Cease
> and Desist all surface disturbing activities immediately.**

I am enclosing a Plan of Operations form for you to fill out. Please note that filling out the enclosed Plan of Operations does not alleviate your obligation to cease and desist all surface disturbing activities. If you plan on lawfully conducting mining-related activities on your Dreamtime unpatented mining claim, you must fill out this Plan of Operations. Until then, you may not resume your operations.

Please return the Plan of Operations to me by **November 1, 2015**. Once I have received it, your proposal will be analyzed by the district specialists and your bond amount will be reviewed in order to determine whether any further bonding will be needed to cover your current and proposed activities. Of course, the sooner your completed Plan of Operations is received, the sooner this process may be started, and the sooner your operations may resume.

If the South Park Ranger District does not receive your Plan of Operations by November 1, 2015, you will face charges under 36 CFR 261 for operating on NFS lands without an approved plan of operations.

Regardless of your submission or non-submission of your Plan of Operations, the Forest Service will require to you to remove _all_ structures (i.e. trailer, gate, fence – including wire and t-posts, platform/stage, sign), mechanized equipment (i.e. backhoe, front end loader, etc.), and personal property by **_November 9, 2015._** If you do not remove the trailer, fence, gate, sign, mechanized equipment, and all personal property, the Forest Service will proceed with impoundment procedures, which will result in additional costs to you.

*Defs.' Ex. 1, Oct. 2, 2015 Letter from Voorhis to Good* [#18-1].

On June 6, 2017, a letter was sent to Plaintiff Uecker by Defendant Voorhis, stating:

"that if you did not vacate the site and remove all your personal property, structures, and improvements on the Blue on Black claim by July 6, 2017, your equipment and inanimate property would be in trespass and subject to impoundment." *Compl.* [#1] at 14.

On September 27, 2017, Defendant Voorhis "led a team of Forest Service employees and private contractors as they removed valuable and necessary mining equipment" and other property (including signs and papers marking their mining claims)

from the Blue on Black and Dreamtime mining claims worked by Plaintiffs. *See Compl.* [#1] at 3-5, 7; *see also Ex. A to Compl.* [#1-1]; *Ex. B to Compl.* [#1-2]. Plaintiffs were told that the removed property was being impounded through an administrative action rather than through a law enforcement action, although a law enforcement officer was on-site to supervise. *Compl.* [#1] at 5. Plaintiffs assert that the impoundment occurred without a hearing, court order, or the ability to appeal the decision to impound. *Id.* at 7-8. They further assert that they are authorized to operate their mining claims based on (1) the prior Surface Use Determinations,[8] (2) approval of their old plans of operations by a prior Forest Service District Ranger,[9] and (3) a Reclamation Permit from the Colorado Division of Reclamation, Mining and Safety (an agency of the State of Colorado) which "contained all the information required by 36 CFR 228, subpart A."[10] *Id.* at 6-7, 9, 11-12.

Plaintiff Good alleges that he did not receive an impoundment notice until two days after the impoundment occurred, although he provides no allegations regarding when the impoundment notice was mailed to him. *Id.* at 13. On November 1, 2017, Defendant Voorhis sent him another letter. *Id.* at 14.

> I notified you in my letter on September 12, 2017, that the Forest Service would proceed with the impoundment of any and all unauthorized fences and gates, personal property, equipment or vehicles located on the Dreamtime mining claim (CMC 250821) that remained on site after September 17, 2017. . . .

---

[8] Plaintiffs provide no legal authority or non-conclusory allegations that a Surface Use Determination can act in lieu of an approved, current plan of operations.

[9] There are no non-conclusory allegations that the older plans of operations had not expired.

[10] Plaintiffs provide no legal authority or non-conclusory allegations that the Forest Service accepts reclamation permits from the Colorado Division of Reclamation, Mining and Safety in lieu of its own determination regarding approval of operating plans.

In this same letter, you were issued an Impoundment Notice for your unauthorized personal property on your Dreamtime unpatented mining claim, the terms of which could be enforced on or after September 17, 2017. The U.S. Postal Service receipt shows that these letters were delivered to your P.O. Box on September 15, 2017. Since you did not remove the unauthorized property from the site, and made no contact with any Forest Service officer to arrange to do so, Forest personnel completed the impoundment on September 27, 2017.

I remind you that on October 31, 2013, the Forest Service issued its final appeal decision affirming that your approved plan of operations, which was signed on January 28, 2005, for mining operations on the Dreamtime Claim had expired on December 31, 2009, and that you needed to seek and obtain approval of a new plan of operations to continue mining. There have been several communications from the Forest Service since that time advising you of the information you needed to provide to obtain approval of a new plan of operations from the Forest Service. On October 2, 2015, I sent a letter notifying you that you either needed to obtain authorization in an approved plan of operations or vacate the site and remove all your personal property, structures, and improvements on the Dreamtime claim by November 9, 2015. On March 2, 2016, I sent a follow-up letter notifying you that you still had not provided the necessary information to obtain Forest Service approval of a plan of operations, therefore your equipment and inanimate property would be in trespass and subject to impoundment. As of the date of this letter, you have yet to remedy your unauthorized operations.

Again, unless you notify and obtain approval in advance from the South Park Ranger District, any further use of mechanized equipment on the Dreamtime claim for mining related activities will be subject to enforcement action under Forest Service regulations governing mining and prohibited acts on National Forest System lands. The mining regulations (36 CFR 228 Subpart A) require you to obtain approval through a plan of operations for any significant disturbance to surface resources.

The actions the agency took will help ensure that unnecessary damage caused by your unauthorized mining activities to National Forest resources will not occur. To ensure protection of your personal items that were removed from the Dreamtime claim including: rock specimens, personal property, metal T-posts, barbless wire, signs, gate, trailer, John Deere 510B Backhoe, etc., the Forest Service has stored them in a secure location. However, due to the volume of miscellaneous items and the potential health and safety hazards associated with removal, many other items were left in place. These items included:

      1.      All items in the "main pit" excavation;

2.      Wood pallets under the mineral specimen table;
3.      Various small mineral specimens on specimen table;
4.      Platform/sound stage located near your access road and gate;
5.      Multiple picnic tables;
6.      Fencing supplies and signs;
7.      Miscellaneous bottles, cans, scrap metal/wood.

You will need to remove these items within *15 days* of the date on this letter (November 16, 2017). If you do not, the remaining property may be subject to impoundment by the Forest Service. Such impoundment will be conducted as funds and manpower are available. Failure of the Forest Service to remove, or impound in place, the structures, improvements or personal property within a certain time period does not constitute a waiver of my determination that the property is subject to impoundment.

My letter to you of September 12, 2017, also noted that should it be necessary for the Forest Service to do the impoundment, you could be billed to recover those costs. Your failure to comply has resulted in the Forest Service's unavoidable expenditures of public money to remedy the damage you caused to surface resources during your unauthorized occupancy and operations.

Accordingly, I have decided that it is appropriate to bill you for the costs incurred to date. Enclosed is an itemized statement tabulating the expenditures which total ***$17,633.92***. You will be receiving a bill for this expenditure in the mail. These costs only include the cost of the impoundment that has occurred.

In addition the Forest Service is coordinating with the State of Colorado, Division of Reclamation, Mining and Safety (DRMA) to forfeit your 2011 financial warranty, which will be utilized to cover the cost of final reclamation. Any additional expenses, not covered by the bond, may be billed to you separately.

The impounded property will be held by the Forest Service for a period of 90 days, after which it may be disposed of if not redeemed according to federal regulations at 36 CFR 262.12 and 36 CFR 262.13. The 90-day period commenced September 28, 2017, the day after the impoundment was completed, and will expire at midnight December 26, 2017. Enclosed is a copy of the regulations governing Forest Service impoundment procedures.

You may make arrangements with my office to redeem your property within the 90-day period. In order for property to be released, you must submit proof of ownership and pay all expenses incurred by the United States in advertising, gathering, moving, and impounding your property. As stated

above, this amounts to $17,633.92.

Impounded property that is not redeemed by the date set for its disposition (December 27, 2017) shall become the property of the United States and may be retained by the Forest Service for official use, sold at public sale to the highest bidder, or otherwise disposed of as deemed appropriate by the Forest Service.  When impounded property is sold, the forest officer conducting the sale shall furnish the purchaser with a bill of sale or other written instrument evidencing the sale.  Please note, you will remain liable for all costs associated with impoundment, removal, transportation, and storage of the property, minus any amount received from the sale of the property.

*Pls.' Ex. 7, Nov. 1, 2017 Letter from Voorhis to Good* [#27-7].

As a result of the foregoing, Plaintiffs assert the following legal claims: (1) violation of the General Mining Act of 1872, 30 U.S.C. § 21, (2) violation of the Common Varieties Act, also known as the Surface Resources Act of 1955, or the Surface Resources and Multiple Uses Act, 30 U.S.C. § 601 et seq., *see Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 785 (10th Cir. 2010), (3) violation of the Fourth Amendment (unreasonable seizure), (4) violation of the Fifth Amendment (both substantive and procedural due process), (5) conversion, (6) violation of Colo. Rev. Stat. 34–46–103, (7) "breach of trust," (8) "prohibiting and preventing bona fide mining operations," (9) "deprivation of beneficial use of real property," (10) violation of the Colorado Constitution, and (11) violation of 36 C.F.R. § 228, subpart A.  *See id.* at 2-4.

Plaintiffs seek the following relief: (1) "[r]eturn of all property taken from the Blue on Black and Dreamtime mining claims on September 27, 2017, at no cost to Plaintiffs;" (2) "[r]eplacement of all Plaintiffs' property that was damaged or destroyed during the 'impoundment,' in transit to the facility where such property was stored following the seizure, or during the storage period," (3) "[r]eplacement of all plaintiffs' property that may be sold at auction or otherwise appropriated by the Forest Service," (4) "[p]unitive damages

in the amount of 4 times actual damages awarded, or whatever punitive damages the court or jury finds appropriate," (5) "[a]n order from the court prohibiting the United States Forest Service from causing any further material interference or endangerment to operations on plaintiffs' mining claims without a court order or warrant," (6) "[a]n order from the court compelling the United States Forest Service to post an advertisement in a local paper stating that plaintiffs' property was taken without due process of law" in order "to protect plaintiffs' standing in the community," (7) "$1000 per day for each claimant for every day each claimant has been or will be prevented from working their claims," (8) "Plaintiffs' court costs and attorney's fees," and (9) "[a]ny other remedies the court finds it proper to grant."[11] *Id.* at 18-19; *see also id.* at 19-22 (providing the basis for Plaintiffs' requested injunctive relief).

In the present Motions [#18, #19], Defendants assert that all of Plaintiffs' claims

_____

[11] Plaintiffs provide a detailed accounting of the mining equipment that was allegedly taken, damaged, or destroyed. *Compl.* [#1] at 18. With respect to the Blue on Black mining claim, Plaintiffs list the following: (1) 1979 John Deere 450 c with backhoe attachments - $25,000; (2) 13 ft. travel trailer used as storage and its contents - $1,500; (3) at least 45 metal fencing t-posts and at least 3600 ft. of barbless wire - $376.05; (4) 12 wooden 4x4 fence stabilization posts that were chain-sawed down - $251.16; (5) 2 wooden tables (1 taken, 1 destroyed) - $200; (6) minerals stored on said tables that were taken - $500; (7) 2 4x4 claim marking posts with claim identification - $41.86; (8) claim identification papers which included a map of the claim and how it lay - $15; (9) current loss of production - $1,000 per day, 16 work days per month = $16,000; and (10) potential future loss of production - $1,000 per day, 16 work days per month times a potential 24 months = $384,000. *Ex. A to Compl.* [#1-1]. These ten items total $427,884.07. *Id.* Although proceeding pro se, Plaintiffs also point to "potential attorney fees" of $142,628.02, creating a grand total claim of $570,512.09 with respect to the Blue on Black mining claim. *Id.* With respect to the Dreamtime mining claim, Plaintiffs list the following: (1) 1985 John Deere 510b - $32,000; (2) 26 ft. travel trailer used as storage and its contents - $1,200; (3) at least 40 metal fencing t-posts and at least 3000 ft. barbless wire - $300; (4) custom wooden sign (referred to as an identifying claim marker for Dreamtime claim) - $1,200; (5) minerals - $500; (6) 1 4x4 claim marking post with claim identification - $18; (7) current loss of production - $1,000 per day, 16 work days per month = $16,000; and (8) potential future loss of production - $1,000 per day, 16 work days per month times a potential 24 months = $384,000. *Ex. B to Compl.* [#1-2]. These eight items total $435,218. *Id.* Plaintiffs again point to "potential attorney fees" of $145,072.66, creating a grand total claim of $580,290.66 with respect to the Dreamtime mining claim. *Id.*

should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. Standard of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss

pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.     Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

Plaintiffs allege that they have unpatented mining claims. *Compl.* [#1] at 17. The Federal Circuit Court of Appeals has recently provided a succinct overview of the 1872 Mining Law, unpatented mining claims, and the limited property rights such claimants have under the United States Constitution, which, in relevant part, the Court incorporates here. *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1255-56 (Fed. Cir. 2017).

> In 1872, Congress enacted the General Mining Law, which made "all valuable mineral deposits in lands belonging to the United States . . . free and open to exploration and purchase." 30 U.S.C. § 22. The law "made public lands available to people for the purpose of mining valuable mineral deposits" by "reward[ing] and encourag[ing] the discovery of minerals that are valuable in an economic sense." *United States v. Coleman*, 390 U.S. 599, 602 (1968).

> Under the General Mining Law, a citizen who discovers valuable minerals on a public land may secure a mining claim. *See* 30 U.S.C. § 28. To do so, a citizen must "locate" her claim, which includes marking the boundary of the claim, posting a discovery monument and notice, and maintaining adequate records of the location date and boundaries of the claim. *See id.* Location of a claim, alongside the "'[d]iscovery' of a mineral deposit, . . . gives an individual the right of exclusive possession of the land for mining purposes." *United States v. Locke*, 471 U.S. 84, 86 (1985) (quoting 30 U.S.C. § 26). . .

> Once established, a mining claimant receives "a 'patent,' that is, an official document issued by the United States attesting that fee title to the land is in

the private owner." *Kunkes v. United States*, 78 F.3d 1549, 1551 (Fed. Cir. 1996). A patented mining claim is "a property right in the full sense." *Union Oil Co. v. Smith*, 249 U.S. 337, 349 (1919).

Until a patent issues, the mining claimant has an "unpatented" mining claim, a "unique form of property." [*Best v. Humboldt Placer Min. Co.*, 371 U.S. 334, 335-36 (1963)]. An unpatented claim entitles a claim holder to "extract and sell minerals without paying royalties to the Government," even though "[t]itle to the underlying fee simple estate in the land remains in the United States." *Kunkes*, 78 F.3d at 1551. But these claims are conditional property interests in a highly regulated industry. *Id.* at 1553. This is because the Government has "plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them." *Best*, 371 U.S. at 336. Holders of unpatented mining claims "take their claims with the knowledge that the Government, as owner of the underlying fee title, maintains broad regulatory powers over the use of the public lands on which unpatented mining claims are located." *Kunkes*, 78 F.3d at 1553. But "[e]ven though title to the fee estate remains in the United States, these unpatented mining claims are themselves property protected by the Fifth Amendment against uncompensated takings." *Id.* at 1551.

*Id.*

## A.     Administrative Procedures Act

At the outset, the Court addresses whether Plaintiffs have asserted a claim under the Administrative Procedures Act ("APA"). The APA permits review of final agency actions in federal district courts. 5 U.S.C. § 706. Under the APA, Congress waived the United States' sovereign immunity from suit for actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.

Plaintiffs mention the APA in their Complaint only once, in passing. *See* [#1] at 16. Defendants liberally, although grudgingly, construe the Complaint to possibly assert claims falling under the APA in connection with the 1872 Mining Law and the Surface Resources Act. *Motion* [#18] at 7 ("Plaintiffs do not make an explicit claim under the APA, and thus,

the Court need not consider whether Plaintiffs have made such a claim. However, even were the Court to evaluate the Complaint under the APA, Plaintiffs fail to state a claim.").

In their Response to the Motion, however, Plaintiffs explicitly disclaim asserting any claims under the APA:

> Plaintiffs are not attempting to use this suit to challenge the Forest Service's decision that Plaintiffs must place new plans of operations. Rather, this suit has been filed for the purpose of receiving remedy for the violation of Plaintiffs' rights, and injunction to prevent further violation of rights, as per the 4th and 5th amendments to the Constitution and violation of Plaintiffs' rights under the 1872 mining law and the 1955 act . . . , and for violations of the Colorado Constitution and other statutes. Though Plaintiffs do assert many facts having to do with said Forest Service decision that Plaintiffs must submit new plans of operations, the reason for such assertions is to show the good faith attempts by the Plaintiffs to comply with applicable laws and regulations.

*Response* [#26] at 14-15; *see also id.* at 9 (stating that "an argument that the proper way to deal with the situation is through the APA does not have merit"). Thus, the Court finds that Plaintiffs are not seeking review of the Forest Service's administrative decisions under the APA, but rather only the forced removal and impoundment of their property from their mining claim sites and the resultant disruption to their mining operations pursuant to rights protected outside of the APA.[12]

---

[12] In the conclusion to their Response, Plaintiffs state: "Though the Plaintiffs contend that they have causes of action which arise outside of the APA, if the court determines that the APA is the only proper avenue for Plaintiffs to pursue remedy, Plaintiffs move the court to interpret the complaint accordingly." [#26] at 43. The Court first notes that Plaintiffs' request is procedurally improper pursuant to D.C.COLO.LCivR 7.1(d): "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." Regardless, Plaintiffs are correct that they may assert causes of action here which arise outside of the APA, as discussed throughout the rest of this Recommendation. However, even were the Court to construe some of Plaintiff's claims as being asserted under the APA, "[a] district court is limited in its review [under the APA] . . . to the "whole record or those parts of it cited by a party." *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 921 F. Supp. 2d 1137, 1184 (D.N.M. 2013) (quoting 5 U.S.C. § 706). Here, no part of the underlying administrative record has been provided or cited by the parties to allow for adequate review under the APA, further underscoring the Court's construction

-16-

## B.    Sovereign Immunity

Defendants Forest Service and Voorhis in his official capacity assert sovereign immunity against most of Plaintiffs' claims.  *See Motion* [#18]; *Reply* [#28].

"There is no such animal as a *Bivens* suit against a public official . . . in his or her official capacity.  Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity . . . operates as a claim against the United States." *Watson v. Hollingsworth*, 741 F. App'x 545, 550-51 (10th Cir. 2018) (quoting *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005)).  Thus, the claims asserted against Defendant Voorhis in his official capacity are repetitive of the claims asserted against the United States Forest Service.

"Sovereign immunity . . . shields the United States, its agencies, and its officers acting in their official capacity from suit."  *Watson*, 741 F. App'x at 551 (quoting *Normandy Apartments, Ltd. v. U.S. Dep't of Hous.*, 554 F.3d 1290, 1295 (10th Cir. 2009)).  "This defense is jurisdictional and deprives courts of subject-matter jurisdiction."  *Id.*  "The party seeking to assert a claim against the government must point to a specific waiver of sovereign immunity to establish jurisdiction."  *Id.*

In the present case, the Court discusses two potential or partial exceptions to sovereign immunity: (1) the Federal Tort Claims Act ("FTCA"), and (2) constitutional claims to the extent they seek injunctive relief.

### 1.    FTCA

Defendants argue that Plaintiffs' conversion claim is a tort and therefore Plaintiffs

_____

of the Complaint [#1] as not seeking review under the APA.

must comply with the exhaustion requirements of the FTCA.  *Motion* [#18] at 15-16; *see, e.g.*, *Harris Grp., Inc v. Robinson*, 209 P.3d 1188, 1199-1200 (Colo. App. 2009) (discussing the "intentional tort" of conversion).

The FTCA allows individuals to sue the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  *Estate of Cummings v. United States*, 651 F. App'x 822, 827 (10th Cir. 2016) (quoting 28 U.S.C. § 1346(b)(1)).  "This waiver of the federal government's immunity, however, is narrowly construed." *Cummings*, 651 F. App'x at 827 (citing *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)).  This means that plaintiffs must "adhere closely to every rule and requirement of the FTCA, including the condition to exhaust their administrative remedies before appearing in federal court." *Cummings*, 651 F. App'x at 827 (citing 28 U.S.C. § 2675(a)).  "This notice requirement is 'jurisdictional and cannot be waived.'"  *Cummings*, 651 F. App'x at 827 (quoting *Bradley v. U.S. ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)).

Plaintiffs' argument to the contrary is unavailing.  *Response* [#26] at 40.  First, they cite to *McKart v. United States*, 395 U.S. 185, 197-98 (1969), for the proposition that "exhaustion is not required when the issue is one of statutory interpretation because it does not require any agency expertise").  *Id.*  However, the Court finds that *McKart* is inapposite on a variety of grounds, not the least of which is that Defendants are only arguing that the FTCA bars Plaintiffs' tort claim of conversion; in other words, there is no issue of "statutory interpretation" here.  *See Motion* [#18] at 15-16.  Second, Plaintiffs cite to *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), for the proposition that "[a]t the motion to dismiss stage, '[t]he issue is not whether a plaintiff will ultimately prevail[,] but whether the claimant is

entitled to offer evidence to support the claims.'" *Response* [#26] at 40. However, nothing in *Scheuer* eliminates the bedrock rule that "a federal court must, in every case and at every stage of the proceeding, satisfy itself as to its own jurisdiction." *Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) (internal quotation marks omitted). Third, the Court notes that Plaintiffs do not argue that they have actually exhausted their administrative remedies. *See Response* [#26] at 40.

Accordingly, the Court **recommends** that Plaintiffs' conversion claim against Defendants Forest Service and Voorhis in his official capacity be **dismissed without prejudice** on the basis of lack of subject matter jurisdiction.[13] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (stating that dismissal for lack of subject matter jurisdiction must be without prejudice).

### 2.     Constitutional Claims

Plaintiffs assert claims under the Fourth and Fifth Amendments of the United States Constitution. *See, e.g.*, *Compl.* [#1] at 2. With respect to the Fourth Amendment, Defendants concede that, unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiffs' claims against Defendants for injunctive relief from alleged constitutional violations. *Motion* [#18] at 16-17; *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive

---

[13]   The precise legal basis for several of Plaintiffs' other claims is unclear, such as, for example, "prohibiting and preventing bona fide mining operations" and "deprivation of beneficial use of real property." *See, e.g.*, *Compl.* [#1] at 2. However, to the extent those claims' bases lie in tort, the Court reaches the same conclusion regarding the FTCA and exhaustion as it does for the conversion claim, i.e., that Plaintiffs have failed to exhaust their administrative remedies and that the Court lacks subject matter jurisdiction over them.

relief from alleged constitutional violations). Injunctive relief may also be available pursuant to the Fifth Amendment under rare circumstances. *See, e.g.*, *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1042 (10th Cir. 2001) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)).

Plaintiffs' claims may be interpreted, in part, as seeking damages relief under the Takings Clause of the Fifth Amendment. *See Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1361-62 (Fed. Cir. 2009) (stating that the Takings Clause of the Fifth Amendment is money-mandating). However, the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), provide the appropriate relevant mechanisms for pursuing such a claim. *See, e.g.*, *Cortez v. E.E.O.C.*, 585 F. Supp. 2d 1273, 1288 (D.N.M. 2007). "Whereas the Little Tucker Act creates jurisdiction in the district courts concurrent with the Court of Federal Claims for covered claims of $10,000 or less, the Tucker Act assigns jurisdiction to the Court of Federal Claims regardless of monetary amount." *United States v. Bormes*, 568 U.S. 6, 10 n.2 (2012). "A plaintiff attempting to invoke the subject matter of the federal district courts bears the burden to establish his or her claim does not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act." *Cortez*, 585 F. Supp. 2d at 1288 (citing *Colo. Dep't of Highways v. U.S. Dep't of Transp.*, 840 F.2d 753, 755 (10th Cir. 1988)).

As outlined in the Background section of this Recommendation, Plaintiffs seek far more than $10,000, even if the alleged value of the equipment were solely at issue. Thus, the concurrent jurisdiction of the Little Tucker Act is inapplicable here, and the Court lacks jurisdiction over Plaintiffs' Fifth Amendment claim with respect to damages because, under the Tucker Act, exclusive jurisdiction is vested in the Court of Federal Claims.

Accordingly, the Court **recommends** that Plaintiffs' Fourth and Fifth Amendment claims against Defendants Forest Service and Voorhis in his official capacity be **dismissed without prejudice** on the basis of lack of subject matter jurisdiction to the extent Plaintiffs seek damages. *See Brereton*, 434 F.3d at 1218.

### 3. Remaining Claims

As noted above, "[t]he party seeking to assert a claim against the government must point to a specific waiver of sovereign immunity to establish jurisdiction." *Watson*, 741 F. App'x at 551 (quoting *Normandy Apartments*, 554 F.3d at 1295). Plaintiffs have not sufficiently done so with respect to the vast majority of their claims asserted against Defendants Forest Service and Voorhis in his official capacity, including those claims with respect to (1) the 1872 Mining Law; (2) the Surface Resources Act; (3) the Colorado Constitution; (4) 36 C.F.R. § 228, subpart A; (5) Colo. Rev. Stat. § 34–46-103; (6) breach of trust; (7) deprivation of beneficial use of real property (to the extent not subsumed under Plaintiffs' Fifth Amendment claims for injunctive relief); and (8) prohibiting and preventing bona fide mining operations.

Accordingly, the Court **recommends** that these eight claims against Defendants Forest Service and Voorhis in his official capacity be **dismissed without prejudice** on the basis of lack of subject matter jurisdiction. *See Brereton*, 434 F.3d at 1218. Thus, with respect to Defendants Forest Service and Voorhis in his official capacity, the Court only proceeds to examine the merits of Plaintiffs' Fourth and Fifth Amendment claims to the extent they seek injunctive relief.

### C. Federal Constitutional Claims

Plaintiffs assert violations of their Fourth and Fifth Amendment rights against all Defendants, including Defendant Voorhis in his individual capacity. *See, e.g., Compl.* [#1] at 2.

## 1.    Fourth Amendment[14]

Plaintiffs assert that Defendants violated their Fourth Amendment rights "because said removal of Plaintiffs' valuable mining property from their bona fide mining claims was an unreasonable seizure." *Compl.* [#1] at 3-4.

"The Fourth Amendment prohibits unreasonable seizures by the government." *United States v. Milne*, __ F. App'x __, __, 2018 WL 6602092, at *5 (10th Cir. Dec. 14, 2018) (citing U.S. Const. amend. IV). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Fourth Amendment protects "people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). However, "any determination of just what protection is to be given requires, in a given case, some reference to a place." *United States v. Ruckman*, 806 F.2d 1471, 1473 (10th Cir. 1986). "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." *Jacobsen*, 466 U.S. at 115.

The Court notes that, while Plaintiffs' unpatented mining claims may be exclusive,

---

[14] In connection with their Fourth Amendment argument, Plaintiffs state: "First, Plaintiffs have moved the court for injunctive relief. It is interesting to note that Plaintiffs filed a separate motion for preliminary injunction, but the court has been unresponsive to that motion. Plaintiffs are left wondering why." *Response* [#26] at 41 (filed May 25, 2018). Plaintiffs filed their Motion for Preliminary Injunction [#10] on December 18, 2017. The District Judge issued an Order [#11] denying the motion without prejudice on December 20, 2017, and copies of the Order [#11] were mailed to Plaintiff Uecker at his Elfin Glen Drive address and to Plaintiff Good at his Indian Creek Road address.

access to the land on which the mining operations are held is nonexclusive. 43 C.F.R. § 3802.4–2. In other words, "any member of the public is free to picnic on the claim, sleep on it, or watch tumbleweeds blow across it." *United States v. Fahey*, 769 F.2d 829, 837 (1st Cir. 1985). "What a person exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. The absence of a privacy interest "is highly relevant to the reasonableness of" an official's conduct with respect to seizures. *Jacobsen*, 466 U.S. at 121.

In *United States v. Fahey*, the First Circuit Court of Appeals held that an owner of an unpatented mining claim "had no legitimate expectation of privacy in his claim." 769 F.2d at 837 (cited by *Sibrico v. Ortiz*, 878 F.2d 333, 337 (10th Cir. 1989)). The circuit court determined that the plaintiff "had no legitimate expectation to remain free from warrantless intrusion under the open fields doctrine as expressed in *United States v. Oliver*, 466 U.S. 170 (1984)." 769 F.2d at 837. The *Fahey* court continued:

> In *Oliver*, the Supreme Court examined the intent of the framers of the Constitution and concluded that fourth amendment protections for persons, houses, papers, and effects from unreasonable searches and seizures do not encompass open fields because "[o]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops that occur in open fields." *Oliver*, 466 U.S. 170. We do not believe that [the plaintiff] has offered any reasonable distinction, nor can we find one, between the growing of crops and the separating of minerals from the surface of land.

769 F.2d at 837.

The government's interference here, in which it seized Plaintiffs' mining equipment, is greater than the interference at issue in *Fahey*, which concerned the taking of soil samples from the plaintiff's claim. However, although the Court has not located a case with

similar allegations which asserts a Fourth Amendment claim, it is axiomatic that where there is no legitimate expectation of privacy, there can be neither a search nor a seizure implicating the Fourth Amendment. *See, e.g.*, *United States v. Burleson*, 657 F.3d 1040, 1047 n.4 (10th Cir. 2011) (holding that the Fourth Amendment is not implicated with respect to search or seizure because there is no legitimate expectation of privacy in one's criminal history); *Minnesota v. Carter*, 525 U.S. 83, 91 (1998) (holding that "any search which may have occurred did not violate [the plaintiffs'] Fourth Amendment rights" because they "had no legitimate expectation of privacy in the apartment" at issue); *California v. Greenwood*, 486 U.S. 35 (1988) (holding that a warrantless search and seizure of garbage placed outside of the residence for collection does not violate the Fourth Amendment because there is no legitimate expectation of privacy in such garbage); *Hudson v. Palmer*, 468 U.S. 517 (1984) (holding that random searches without probable cause are permissible in prison because there is no legitimate expectation of privacy in a prison cell).

As Defendants point out, even assuming that Plaintiffs were operating a commercial establishment that was entitled to some expectation of privacy, their rights under the Fourth Amendment are less than those afforded within the home. *New York v. Burger*, 482 U.S. 691, 699 (1987) ("An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home."). Unpatented mining claims "are conditional property interests in a highly regulated industry." *Reoforce, Inc.*, 853 F.3d at 1256. Closely regulated industries may be subject to administrative rules and regulations which are excepted from the Fourth Amendment's warrant requirement. *New York v. Burger*, 482 U.S. 691, 702 (1987). The Court agrees with Defendants' assertion that "[t]he government's interest here is at its peak because the impounded

property was on federal lands, where the Property Clause gives the Forest Service, through Congressional authorization, a constitutional interest in regulating activity." *Motion* [#18] at 18 (citing U.S. Const. art. IV, § 3, cl. 2; 16 U.S.C. § 551; 7 U.S.C. § 1011(f)). As discussed in depth below in connection with Plaintiffs' Fifth Amendment procedural due process claims, Plaintiffs have failed to adequately allege that Defendants failed to follow the applicable administrative rules and regulations before seizing Plaintiffs' property. Plaintiffs received prior notice of the seizure, were provided an opportunity to avoid the seizure by filing appropriate operating plans, and had the opportunity to reclaim their property after the seizure; thus, the Court cannot find that Plaintiffs have stated a claim for an unreasonable seizure under the Fourth Amendment.

Accordingly, the Court **recommends** that Plaintiffs' claim under the Fourth Amendment be **dismissed with prejudice** as to all Defendants (to the extent not previously dismissed without prejudice on the basis of sovereign immunity). *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

### 2. Fifth Amendment

The Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. Plaintiffs argue that Defendants violated the Fifth Amendment by denying Plaintiffs' procedural and substantive due process rights, "because said removal of Plaintiffs' property from their bona fide mining claims was conducted without providing the Plaintiffs with required due process." *Compl.* [#1] at 2, 4. "It is axiomatic that procedural and substantive due-process claims require distinct analyses . . . ." *Cummings v. Dean*, 913 F.3d 1227, 1237 (10th Cir. 2019). The

Court also examines Plaintiffs' Fifth Amendment claim to the extent it can be construed as a separate claim under the Takings Clause.

### a. Procedural Due Process

"The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *McDonald v. Wise*, 769 F.3d 1202, 1212-13 (10th Cir. 2014) (citations and internal quotation marks omitted). The Court uses a "two-step inquiry" in evaluating procedural due process claims. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308 (10th Cir. 2018). First, the Court asks whether the government's "actions deprived plaintiffs of a constitutionally protected property interest." *Id.* If so, then the Court "consider[s] whether they were afforded the appropriate level of process." *Id.* Importantly, "the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Id.* Defendants do not argue that Plaintiffs have failed to adequately allege the first requirement, i.e., that Plaintiffs have stated a constitutionally protected property interest. Thus, the Court turns to the second question, i.e., whether Plaintiffs were afforded an appropriate level of process.

Defendants provide a compelling argument that, "because the Forest Service has plenary power over the regulation of [National Forest Service] land, the process set forth by the Forest Service is the process that is due." *Motion* [#18] at 13 (citing *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1276 (10th Cir. 2017); *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987); U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the

Territory or other Property belonging to the United States . . . ."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Castro v. United States Dep't of Homeland Security*, 835 F.3d 422, 442-43 (3d Cir. 2016).

However, even aside from this plenary power argument, the Court finds that Defendants' impoundment regulations meet due-process requirements, because they provide for prior notice of potential impoundment as well as a procedure to retrieve impounded property. *See Motion* [#18] at 13-14. First, with respect to notice:

> Automobiles or other vehicles, trailers, boats, and camping equipment and other inanimate personal property on National Forest System lands without the authorization of a Forest officer which are not removed therefrom within the prescribed period after a warning notice as provided in this regulation may be impounded by a Forest officer. Whenever such Forest officer knows the name and address of the owner, such impoundment may be effected at any time five days after the date that written notice of the trespass is mailed by registered mail or delivered to such owner.

36 C.F.R. § 262.12(a).[15]

"[I]n determining what process is due, account must be taken of the *length* and *finality* of the deprivation." *Ward v. Anderson*, 494 F.3d 929, 936 (10th Cir. 2007). In the present context, if the property is not removed by the owner and is ultimately impounded by the Forest Service, the owner retains a right of redemption:

> Personal property impounded under this regulation may be disposed of at the expiration of 90-days after the date of impoundment. The owner may redeem the personal property within the 90-day period by submitting proof of ownership and paying all expenses incurred by the United States in advertising, gathering, moving, impounding, storing, and otherwise caring for the property, and also for the value of the use of the site occupied during the period of the trespass.

---

[15] Plaintiffs assert that Defendants failed to comply with the regulation by sending mail certified rather than registered. *See Compl.* [#1] at 13. However, they provide no argument regarding any adverse impact of the certified mailings on their due process rights.

36 C.F.R. § 262.12(c). In other words, the deprivation need only be temporary, not final, and the property may be redeemed as soon as proof of ownership is presented and expenses are paid.

Plaintiffs allege that they had previously but no longer had authorization from the Forest Service to keep personal property at their mining claim sites on September 27, 2017, the date when the impoundment occurred. *See Compl.* [#1] at 3. On October 2, 2015, Defendant Voorhis sent a letter to Plaintiff Good notifying him that all property must removed from his mining claim site (the Dreamtime claim). *Id.* at 14. Defendant Good *received* another letter on September 29, 2017, notifying him of the impoundment, but there are no allegations stating that the letter was not *mailed* more than five days prior to the impoundment. *Id.* at 13; *see also* 36 C.F.R. § 262.12(a) (providing in part: "Whenever such Forest officer knows the name and address of the owner, such impoundment may be effected at any time five days *after the date that written notice of the trespass is mailed* by registered mail or delivered to such owner.").[16] Meanwhile, on June 6, 2017, Defendant Voorhis sent Plaintiff Uecker a letter stating that all property must be removed from his mining claim site (the Blue on Black claim) no later than July 6, 2017, or else it would be subject to impoundment. *Compl.* [#1] at 14. There are no allegations that Plaintiffs were not informed of their rights of redemption of the property pursuant to 36 C.F.R. § 262.12(c), and, in the case of Plaintiff Good, it is clear that he was, indeed, informed of that right. *See Pls.' Ex. 7, Nov. 1, 2017 Letter from Voorhis to Good* [#27-7]. Further, the Court notes that it is aware of no prohibition on Plaintiffs seeking approval of new, revised operating plans

---

[16] Plaintiff Good states that there had been other, prior correspondence with Defendant Voorhis but does not provide much detail as to that correspondence. *Compl.* [#1] at 14.

at this time and thereafter returning to their mining claim sites.

Plaintiffs state that "the Forest Service allegations that Plaintiffs do not have valid plans of operations are not supported by any court ruling." *Response* [#26] at 15. However, Plaintiffs point to no legal authority, and the Court is aware of none, which requires such a ruling by a court. 36 C.F.R. § 228.5 vests the discretion to approve a plan of operations in the District Ranger. If an applicant disagrees with the District Ranger's decision to deny a proposed plan of operations, then the decision may be administratively appealed. 36 C.F.R. §§ 228.14; 214.4(b)(1). "[T]he appeal decision shall constitute [the United States Department of Agriculture's] final administrative decision." 36 C.F.R. § 214.18. "[A] person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary [of Agriculture]; (2) the Department [of Agriculture]; or (3) an agency, office, officer, or employee of the Department [of Agriculture]." 7 U.S.C. § 6912(e); *see also* 36 C.F.R. § 214.20 ("Per 7 U.S.C. 6912(e), judicial review of a decision that is appealable under this part is premature unless the plaintiff has exhausted the administrative remedies under this part."). The APA is the appropriate legal mechanism for review of final agency actions in federal district courts. 5 U.S.C. § 706.

Plaintiffs did take advantage of their rights to administratively appeal Defendant Voorhis's decisions to deny their proposed plans of operations. *See Compl.* [#1] at 10 ("The decisions relied upon by Ranger Voorhis to establish noncompliance on both claims were appealed by plaintiffs."). They allege that, "[i]n both cases, the Forest Service appeal deciding officer (Forest Supervisor) did not issue a decision on the appeals within the specified timeframes [sic] contained in the regulations governing the appeals." *Id.* They

therefore assert that "[d]ue to the fact that the appeal deciding officers in both aforementioned appeals did not issue an appeal decision within the required timeframes [sic], the Forest Service cannot put forth any legitimate cause of action in court in regard to said decisions." *Id.* at 10-11. Although unclear, Plaintiffs appear to be arguing that the Forest Service may not defend its actions in a court of law against Plaintiffs' claims in the absence of a timely appeal decision. However, they provide no legal authority for this assertion, and the Court is likewise aware of none.

Plaintiffs cite to *United States v. Shumway*, 199 F.3d 1093, 1108 (9th Cir. 1999), for the proposition that "[f]ailure to file an approved operating plan cannot, *ipso facto*, cause a forfeiture of the bona fide claim owner's equitable title and possessory right." *Response* [#26] at 42. However, individuals with possessory rights to mining claims must "comply with the laws of the United States" in order to "have the exclusive right of possession and enjoyment" of such claims. 30 U.S.C. § 26. *Shumway* is distinguishable because there, the operating plan had been approved except for the bond amount, and "[t]he Forest Service ha[d] offered no explanation for why its disapproval [on this basis] of an operating plan should result in eviction." Here, the Forest Service has provided a detailed explanation of the relevant regulations to show why lack of an approved operating plan can result in impoundment.

First, private parties are required by the Forest Service to submit and have an approved mining plan of operations to validly work a mining claim on NFS land. *See* 36 C.F.R. § 228.1 (stating that mining operations "shall be conducted so as to minimize adverse environmental impacts on [NFS] surface resources"); 36 C.F.R. § 228.4 (providing the requirements for submission of the plan of operations); 36 C.F.R. § 228.5. (stating that

the Forest Service must approve the plan); 36 C.F.R. § 228.4(a)(4) (providing: "If the District Ranger determines that any operation is causing or will likely cause significant disturbance of surface resources, the District Ranger shall notify the operator that the operator must submit a proposed plan of operations for approval and that the operations can not be conducted until a plan of operations is approved."). Thus, Plaintiffs were required to have current, approved operating plans for their mining claims.[17]

Second, "[u]se or occupancy of [NFS] lands or facilities without an approved operating plan when such authorization is required" is prohibited. 36 C.F.R. § 261.10(p). In other words, Plaintiffs were prohibited from "use or occupancy" of their mining claim sites in the absence of approved operating plans.

Third, "[a]utomobiles or other vehicles, trailers, boats, and camping equipment and other inanimate personal property on National Forest System lands without the authorization of a Forest officer which are not removed therefrom within the prescribed period after a warning notice as provided in this regulation may be impounded by a Forest officer." 36 C.F.R. § 262.12(a). This means that, because Plaintiffs were unauthorized to use or occupy their sites, Defendants were permitted to impound their property after providing appropriate notice to Plaintiffs.[18]

---

[17] Although there are some exceptions to this rule, none appear to be applicable here. *See generally* 36 C.F.R. §§ 228.4, 228.5.

[18] Plaintiffs argue that 36 C.F.R. § 262.12(a) "does not apply to buildings or improvements to real property such as mining structures; the regulation applies to 'inanimate personal property.'" *Response* [#26] at 8. Plaintiffs are correct that this regulation applies only to "[a]utomobiles or other vehicles, trailers, boats, and camping equipment and other inanimate personal property." 36 C.F.R. § 262.12(a). However, Plaintiffs have not alleged loss of any "animate" personal property (such as livestock) or of any inanimate "real" property (such as cabins). *See* [#1-1, #1-2] (providing detailed lists of what was allegedly taken, damaged, or destroyed by the Forest Service). Thus, Plaintiffs' citation to *Edgar v. United States*, No. 09-6376-AA, 2011 WL 5514037 (D. Or. Nov. 9, 2011), is

In short, the Court concludes that the Complaint lacks sufficient allegations to support a procedural due process violation. The allegations assert that Defendant Voorhis asked Defendant Uecker, and repeatedly asked Defendant Good, in writing to remove their property because it was no longer authorized to be on National Forest System lands and would be impounded if not removed. *See Wasson v. United States*, No. 2:13-cv-01194-SU, 2015 WL 3936382, at *12-13 (D. Or. June 26, 2015) (finding no due process concerns where "Forest Service employees repeatedly asked [the plaintiff] to remove his property as it was not authorized to be on National Forest System lands"). Although Plaintiffs may have disagreed with the Forest Service's decision in this regard, nevertheless, Plaintiffs were able to administratively appeal the Forest Service's decisions on their operating plans, they received advance notice of the impoundments, and they had the right to reclaim their property afterwards.

Accordingly, the Court **recommends** that Plaintiffs' procedural due process claim under the Fifth Amendment be **dismissed with prejudice** as to all Defendants (to the extent not previously dismissed without prejudice on the basis of sovereign immunity). *Reynoldson*, 907 F.2d at 127.

> **b.  Substantive Due Process**

There are two types of substantive due process claims: (1) claims that the government has infringed a fundamental right and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial

---

inapposite for two reasons. First, the plaintiff there had removed his personal property and the issue revolved around the destruction of four real property structures on the site, consisting of a mill, a generator shed, a bunkhouse, and an outhouse. Second, the judge who issued this order vacated it in full on May 14, 2012.

conscience. *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). "We apply the fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action." *Id.* (citation and internal brackets omitted). Here, Plaintiffs challenge executive action, and therefore this is a "shocks the conscience" claim. *See id.*

"Executive action that shocks the conscience requires much more than negligence." *Id.* "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id.* "Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* (internal quotation marks omitted). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id.* "The behavior complained of must be egregious and outrageous." *Id.* (citing *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) ("We set aside the conviction because such conduct 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency.").

The allegations of this case do not even remotely reach this "shock the conscience" standard. Examples of where courts have found conscience-shocking behavior include a case involving a sheriff's application of stomach pumping to force vomiting and a case where a social worker's actions led to physical and sexual abuse of a minor. *Doe*, 912 F.3d at 1300 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952); *T.D. v. Patton*, 868 F.3d 1209, 1213 (10th Cir. 2017)). Here, mining equipment was impounded after notice was provided to the owners. Even if such actions were negligently or recklessly wrong, there

is nothing about such actions that is brutal or offensive.

Accordingly, the Court **recommends** that Plaintiffs' substantive due process claim under the Fifth Amendment be **dismissed with prejudice** as to all Defendants (to the extent not previously dismissed without prejudice on the basis of sovereign immunity). *Reynoldson*, 907 F.2d at 127.

### c. Takings Clause

Liberally construing the Complaint [#1], Plaintiffs may be asserting a separate claim under the Takings Clause. The Court previously noted that injunctive relief may be available pursuant to the Fifth Amendment in some rare circumstances. *Custer Cty. Action Ass'n*, 256 F.3d at 1042 (citing *Ruckelshaus*, 467 U.S. at 1016). "Unauthorized conduct in the takings context equates to the *ultra vires* actions of an agency, i.e., action explicitly prohibited or outside the normal scope of agency responsibilities." *Custer Cty. Action Ass'n*, 256 F.3d at 1042. "An agency may act within its authority even if its action is later determined to be legally erroneous." *Id.* Here, there are no plausible allegations that the Forest Service took action that was explicitly prohibited or outside the normal scope of its responsibilities. *See id.* At most, although the Court makes no such finding, Plaintiffs merely allege that the Forest Service's actions were legally erroneous. Thus, any claim for injunctive relief under the Takings Clause must fail.

Accordingly, the Court **recommends** that Plaintiffs' Takings Clause claim under the Fifth Amendment be **dismissed with prejudice** as to all Defendants (to the extent not previously dismissed without prejudice). *Reynoldson*, 907 F.2d at 127.

### D. Private Rights of Action

The Court next turns to the remaining claims against Defendant Voorhis in his individual capacity. Some courts have characterized whether a private right of action exists under a given statute as a jurisdictional issue to be addressed pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Shmatko v. Ariz. CVS Stores LLC*, No. 14-CV-01076-PHX-DGC, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014) (dismissing case for lack of subject matter jurisdiction because "[f]ederal law unequivocally holds . . . that the . . . [Controlled Substances Act] do[es] not create private rights of action that can give rise to a federal question"); *Walker v. Bd. of Trustees, Reg'l Transp. Dist.*, 76 F. Supp. 2d 1105, 1112 (D. Colo. 1999) ("I next address whether an implied private right of action exists to enforce Article II, Section 25 of the Colorado Constitution. Although Defendants have not addressed this issue, I must address it *sua sponte* because it implicates the subject matter [jurisdiction] of this court."). However, whether there is a private right of action appears to more appropriately be addressed under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Burks v. Lasker*, 441 U.S. 471, 475-76 & n. 5 (1979) ("The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-90 (1998) (holding that as long as a stated claim is not "frivolous or immaterial," the absence of a valid cause of action does not implicate subject matter jurisdiction); *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1241 n.19 (10th Cir. 2007) (holding that, because whether a private right of action exists is a non-jurisdictional question, its existence may be assumed, without deciding, while the asserted claim is adjudicated on other grounds).

## 1. General Mining Act of 1872

Pursuant to the General Mining Act of 1872, "all valuable mineral deposits in lands

belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States." *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1271 (10th Cir. 2017) (quoting 30 U.S.C. § 22). In short, the statute "provides that citizens may enter and explore the public domain, and search for minerals; if they discover 'valuable mineral deposits,' they may obtain title to the land on which such deposits are located." *Chevron Mining*, 863 F.3d at 1271 (quoting *Andrus v. Shell Oil Co.*, 446 U.S. 657, 658 (1980)). Persons who locate mining claims, "so long as they comply with the laws of the United States, and with [s]tate, territorial, and local regulations . . . , shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations." *Chevron Mining*, 863 F.3d at 1271 (quoting 30 U.S.C. § 26).

> A mining claim is a parcel of land containing precious metal in its soil or rock. A location is the act of appropriating such parcel, according to certain established rules. It usually consists in placing on the ground, in a conspicuous position, a notice setting forth the name of the locator, the fact that it is taken or located, with the requisite description of the extent and boundaries of the parcel, according to the local customs, or, since the statute of 1872, according to the provisions of that act.

*Chevron Mining*, 863 F.3d at 1271 (quoting *Smelting Co. v. Kemp*, 104 U.S. 636, 649 (1881)).

To the extent Plaintiffs assert violation of the General Mining Act of 1872 against Defendant Voorhis in his individual capacity, this claim fails because this law does not expressly permit a private right of action, nor has such a right been implied under it. *See High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1192 (10th Cir. 2006); *see also Rose v. Utah*, 399 F. App'x 430, 437 (10th Cir. 2010) (holding that a plaintiff "cannot rely on [28 U.S.C.] § 1331" for jurisdiction in the absence of a private right of action).

Accordingly, the Court **recommends** that Plaintiffs' claim under the 1872 Mining Law be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

## 2. Surface Resources Act of 1955

Defendants construe this claim under Section 612 of the Act, which provides, in part:

> Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof . . . . Provided, however, That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto . . . .

Plaintiffs do not appear to contest this characterization of their claim in their Responses [#26, #27].

To the extent Plaintiffs assert violation of the Surface Resources Act against Defendant Voorhis in his individual capacity, the Court has failed to locate any legal authority providing an express or implied private right of action under this statute. As Defendants point out, *see Motion* [#18] at 6, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id.* at 286-87 (internal citations omitted).

Accordingly, the Court **recommends** that Plaintiffs' claim under the Surface

Resources Act be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

### 3.  36 C.F.R. § 228, subpart A

To the extent Plaintiffs assert violation of 36 C.F.R. § 228, subpart A by Defendant Voorhis in his individual capacity by his taking actions "contrary to the regulations," *see Compl.* [#1] at 9, the Court has failed to locate any legal authority providing an express or implied private right of action under this statute. Thus, this claim should be dismissed as well. *See Alexander*, 532 U.S. at 286.

Accordingly, the Court **recommends** that Plaintiffs' claim under 36 C.F.R. § 228, subpart A be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

### 4.  Colorado Constitution

Plaintiffs assert that Defendant Voorhis in his individual capacity violated the Colorado Constitution "because said removal of Plaintiffs' property from their bona fide mining claims was conducted without providing Plaintiffs with required due process." *Compl.* [#1] at 4.

The Colorado Supreme Court has stated: "While it may be appropriate to recognize an implied state constitutional cause of action when there is no other adequate remedy, . . . where other adequate remedies exist, no implied remedy is necessary." *Bd. of Cty. Comm'rs of Douglas Cty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996). In *Walker v. Board of Trustees, Regional Transportation District*, 76 F. Supp. 2d 1102, 1112 (D. Colo. 1999), the Court held that no private right of action existed under the due process clause of the

Colorado Constitution (Article II, Section 25: "No person shall be deprived of life, liberty or property, without due process of law."), because the plaintiffs had adequate remedies available to them under the United States Constitution and through various state law causes of action. Under those circumstances, the Court "decline[d] to recognize an implied state constitutional cause of action" and dismissed the plaintiffs' claim asserted under the due process clause of the Colorado Constitution. *Walker*, 76 F. Supp. 2d at 1112.

The circumstances here are materially similar to those in *Walker*, as exhibited by Plaintiffs' many claims asserted under the United States Constitution, federal laws, and state causes of action. Thus, the Court finds that no implied private right of action should be recognized here. *Accord Kessling v. Barker*, No. 11-cv-02192-REB-CBS, 2012 WL 3839380, at *5 (D. Colo. July 23, 2012), *recommendation partially rejected on other grounds by Kessling v. Barker*, No. 11-cv-02192-REB-CBS, 2012 WL 3839346 (D. Colo. Aug. 30, 2012); *Hampton v. Evans*, No. 11-cv-01415-PAB-CBS, 2012 WL 4442789, at *10 (D. Colo. May 4, 2012), *recommendation partially rejected on other grounds by Hampton v. Evans*, No. 11-cv-01415-PAB-CBS, 2012 WL 4442786 (D. Colo. Sept. 26, 2012); *Rueb v. Zavaras*, No. 09-cv-02817, REB-MEH, 2011 WL 839320, at *4 (D. Colo. Mar. 7, 2011) ("Plaintiff's claims pursuant to the Colorado Constitution are complementary to those asserting violations of the United States Constitution. . . . Therefore, plaintiff has no implied right of action to bring such state constitutional claims, and they, therefore, must be dismissed . . . .").

Accordingly, the Court **recommends** that Plaintiffs' claim under the Colorado Constitution be **dismissed with prejudice** with respect to Defendant Voorhis in his

individual capacity.  *Reynoldson*, 907 F.2d at 127.

### 5. Colo. Rev. Stat. § 34–46–103

Plaintiffs further assert that Defendant Voorhis in his individual capacity violated Colo. Rev. Stat. § 34–46–103, which provides in full: "It is unlawful for any person to destroy or appropriate to his own use any mining equipment of which he is not the lawful owner and possessor or to deprive the lawful owner and possessor of the use or possession thereof."  *See Compl.* [#1] at 3.  This statute is a criminal statute.  *See* Colo. Rev. Stat. § 34–46–105 (stating that violation constitutes a class 6 felony).  The Court has found no authority allowing Plaintiffs a civil remedy under this criminal statute.  Thus, because Plaintiffs are private citizens, they lack the authority to assert any claim under this criminal statute.  *See, e.g.*, *Jones v. Jones*, 741 F. App'x 604, 605 (10th Cir. 2018) (stating that a criminal statute "does not create a private civil cause of action").

Accordingly, the Court **recommends** that Plaintiffs' claim under Colo. Rev. Stat. § 34–46–103 be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity.  *Reynoldson*, 907 F.2d at 127.

### E. Remaining State Law Claims[19]

### 1. Conversion

Under Colorado law, conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another."  *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) (quoting *Itin v. Ungar*, 17 P.3d 129, 135 n.10

---

[19] Although only state law claims remain to be addressed against Defendant Voorhis in his individual capacity, these claims should still be addressed by the Court because Defendant Voorhis is a federal officer.  *See, e.g.*, 28 U.S.C. § 1442(a)(1).

(Colo. 2000)).  To state a claim for conversion, a plaintiff must allege that (1) the defendant exercised dominion or control over property, (2) that the property belonged to the plaintiff, (3) that the defendant's exercise of control was unauthorized, (4) that the plaintiff demanded return of the property, and (5) that the defendant refused to return it.  *Scott*, 428 P.3d at 634.

The Court finds that Plaintiffs' have failed to sufficiently allege a claim for conversion against Defendant Voorhis in his individual capacity.  As discussed in detail above, Plaintiffs have not adequately alleged that they had continuing authority from the Forest Service to keep inanimate personal property at their mining sites.  Having failed to sufficiently allege such permission, they have also failed to sufficiently allege that Defendants' exercise of control over the property was unauthorized.  There are no allegations that Defendant Voorhis materially failed to follow the procedures set forth in § 262.12(a) when impounding Plaintiffs' property.  *See, e.g.*, *Wasson*, 2015 3936382, at *14. There are also no allegations that Plaintiffs attempted to exercise their right to redeem their property within the ninety days permitted by § 262.12(c).  *See, e.g.*, *id.*

Accordingly, the Court **recommends** that Plaintiffs' conversion claim be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity.  *Reynoldson*, 907 F.2d at 127.

### 2.      Breach of Trust

The precise basis for Plaintiffs' "breach of trust" claim is unclear.  *See Compl.* [#1] at 3.  The Court is unaware of any state law breach of trust claim that would appear to directly apply here.  With respect to a general theory that the United States breached a

trust with Plaintiffs, however, generally "Plaintiffs cannot transform an ordinary claim for an APA violation into a breach of trust theory—the Supreme Court requires a specific statute or regulation that gives rise to an enforceable trust duty." *Pawnee Nation of Okla. v. Zinke*, No. 16-CV-697-JHP-TLW, 2017 WL 4079400, at *8 (N.D. Okla. Sept. 14, 2017). Regardless, as relevant in this section, there is no argument explaining how such a claim could proceed against Defendant Voorhis in his individual capacity. "Plaintiffs have not identified any statutes or regulations that give rise to a specific fiduciary duty." *Id.* at *7.

Accordingly, the Court **recommends** that Plaintiffs' claim for breach of trust be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

### 3. Prohibiting and Preventing Bona Fide Mining Operations

The precise legal basis for this claim is unclear. *See Compl.* [#1] at 2. The Court has already analyzed the substance of this claim throughout its discussion of the other claims underlying Plaintiffs' lawsuit. The Court is aware of no independent state law cause of action for this claim, and has already addressed the merits of this type of claim in the context of addressing the causes of action previously discussed in this Recommendation.

Accordingly, the Court **recommends** that Plaintiffs' claim for "Prohibiting and Preventing Bona Fide Mining Operations" be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

### 4. Deprivation of Beneficial Use of Real Property

The precise legal basis for this claim is unclear, as well. *See Compl.* [#1] at 3. The Court has already analyzed the substance of this claim throughout its discussion of the

other claims underlying Plaintiffs' lawsuit, especially in conjunction with its analysis of Plaintiff's Fifth Amendment Takings Clause claim. *See, e.g.*, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) (discussing the deprivation of use of property in the context of the Fifth Amendment's Takings Clause). The Court is aware of no independent state law cause of action for this claim.

Accordingly, the Court **recommends** that Plaintiffs' claim for "Deprivation of Beneficial Use of Real Property" be **dismissed with prejudice** with respect to Defendant Voorhis in his individual capacity. *Reynoldson*, 907 F.2d at 127.

## IV. Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motions [#18, #19] be **GRANTED** and that Plaintiffs' Complaint [#1] be **DISMISSED** as outlined above.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th

Cir. 1996).

Dated:  February 28, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge